Slip Op. 18- 79

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ATC TIRES PRIVATE LTD. and ALLIANCE TIRE AMERICAS, INC., | |
| Plaintiffs, | Before: Gary S. Katzmann, Judge |
| v. | Court No.  17-00064 |
| UNITED STATES, | |
| Defendant. | |

### OPINION

[Plaintiffs' motion for judgment on the agency record is denied, and Commerce's <u>Final Determination</u> is sustained.]

Dated: June 25, 2018

<u>Eric C. Emerson</u> and <u>J. Claire Schachter</u>, Steptoe & Johnson, LLP, of Washington, DC, argued for plaintiffs.  With them on the brief was <u>Christopher G. Falcone</u>.

<u>John J. Todor</u>, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant.  With him on the brief were <u>Chad A. Readler</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Franklin E. White, Jr.</u>, Assistant Director.  Of counsel was <u>Jessica DiPietro</u>, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Katzmann, Judge:  In this case, the court enters territory rarely traversed by judicial decision -- namely the intersection of foreign Special Economic Zone ("SEZ") and Export Oriented Unit ("EOU") programs with American laws that permit levying additional duties on certain imports entering the United States to offset the unfair competitive advantages enjoyed by

foreign producers that are subsidized by their respective governments.[1]  Plaintiffs ATC Tires

Private Ltd. ("ATC") and Alliance Tires Americas, Inc. (collectively, "Alliance")[2] bring this action

challenging the Department of Commerce's ("Commerce") final determination in a countervailing

duty investigation covering certain new pneumatic off-the-road tires from India that incentives

associated with Indian EOU and SEZ programs are countervailable subsidies.  Countervailing

Duty Investigation of Certain New Pneumatic Off-the-Road Tires from India: Final Affirmative

Determination, and Final Affirmative Critical Circumstances Determination, in Part, 82 Fed. Reg.

2,946 (Dep't Commerce Jan. 10, 2017) ("Final Determination"), P.R. 545, and accompanying

Issues and Decision Memorandum (Dep't Commerce Jan. 3, 2017) ("IDM"), P.R. 538.

Specifically, Alliance argues that Commerce's determination that SEZ and EOU facilities were

within the customs territory of India and countervailable is neither supported by substantial

evidence nor in accordance with law.  The court concludes that Commerce's determination was

supported by substantial evidence and in accordance with law.

## BACKGROUND

A.  **Legal Background**

   *i.  Countervailable Subsidies Generally.*

To empower Commerce to offset economic distortions caused by countervailable subsidies

and dumping, Congress enacted the Tariff Act of 1930.  Sioux Honey Ass'n v. Hartford Fire Ins.

---

[1] The only such judicial decision identified by the parties to the instant litigation is Essar Steel Ltd. v. United States, 34 CIT 1057, 721 F. Supp. 2d 1285 (2010).  See also Essar Steel Ltd. v. United States, Slip Op. 11–10, 2011 WL 238657 (CIT Jan. 25, 2011) (sustaining remanded Commerce determination), aff'd in part, rev'd in part, 678 F.3d 1268 (Fed. Cir. 2012).

[2] ATC is the subsidiary that produces the tires in India and Alliance is the collective name for both plaintiffs (ATC and Alliance Tires America, Inc.) in this case, and these terms are used accordingly throughout this opinion.

Co., 672 F.3d 1041, 1046 (Fed. Cir. 2012).  Under the Tariff Act's framework, Commerce may --

either upon petition by a domestic producer or of its own initiative -- begin an investigation into

potential countervailable subsidies and, if appropriate, issue orders imposing duties on the subject

merchandise.  Id.; 19 U.S.C. §§ 1671, 1673.

Commerce determines that a countervailable subsidy exists where a foreign government

provides a financial contribution which confers a benefit to the recipient.  19 U.S.C. §1677(5)(B).

A "financial contribution" includes "the direct transfer of funds, such as grants, loans, and equity

infusions, or the potential direct transfer of funds or liabilities, such as loan guarantees" and

"foregoing or not collecting revenue that is otherwise due."  19 U.S.C. § 1677(5)(D)(i)–(ii).  A

subsidy must also be specific to be countervailable, and an export subsidy is considered specific

when it "is, in law or in fact, contingent upon export performance, alone or as 1 of 2 or more

conditions [for benefit eligibility]."  19 U.S.C. § 1677(5A)(B).

*ii.  Special Economic Zones and Export Oriented Units in India.*

At issue in the case are Alliance's production facilities, one operating in an SEZ in Tamil Nadu

and one operating in an EOU in Gujarat.[3]  Commerce has recognized that an SEZ may be

established to manufacture goods and to serve as a free trade and warehousing area pursuant to

India's SEZ Act of 2005.  See Polyethylene Terephthalate Firm, Sheet, and Strip from India, 80

FR 46,956 (Dep't Commerce Aug. 6, 2015) (Preliminary Results), and accompanying Issues and

Decision Memorandum ("Indian PET PDM 2015") at 13, unchanged by Polyethylene

Terephthalate Firm, Sheet, and Strip from India, 81 FR 7,753 (Dep't Commerce Feb. 16, 2016).

As the Government of India has explained:  "SEZ/EOU units are designated areas located within

_____

[3] Alliance has explained that EOUs operate in the same manner as SEZs.  ATC Initial Questionnaire Response at Exhibit 24A.  Commerce does not dispute this conclusion, and accordingly the terms are used interchangeably.

India territory for the generation of additional economic activity within the country and for the promotion of exports.  By Indian law, companies that operate SEZ/EOU units are entitled to exemptions from customs duties and from various taxes on goods and services that are imported and exported from SEZ/EOU facilities."  <u>Final Determination</u> at 19–20 (summarizing the Government of India's comments).  Companies in an Indian SEZ receive: (1) duty-free importation of capital goods and raw materials, components, consumables, intermediates, spare parts and packing material; (2) purchase of capital goods and raw materials, components, consumables, intermediates, spare parts and packing material without the payment of central sales tax thereon; (3) exemption from the services tax for services consumed within the SEZ; (4) exemption from stamp duty for all transactions and transfers of immovable property and related documents within the SEZ; (5) exemption from electricity duty on the sale or supply to the SEZ facility; (6) certain income tax exemptions; and (7) discounted land within an SEZ.  <u>Id.</u>  To be eligible for these benefits, all goods produced, excluding rejects and domestic sales, must be exported and must achieve a net foreign exchange ("NFE") goal -- i.e., export a sufficient quantity of product -- calculated cumulatively for a period of five years from the commencement of production.  ATC's Resp. to Initial Countervailing Duty Questionnaire at 18–19 (Apr. 21, 2016) ("ATC Initial QR"), P.R. 156–58, 179, C.R. 98, 205, 219.

**B.**      <u>**Factual and Procedural Background**</u>

On February 10, 2016, Commerce initiated a countervailing subsidy investigation into off-the-road tires from India.  <u>Certain New Pneumatic Off-the-Road Tires From India, The People's Republic of China, and Sri Lanka: Initiation of Less-Than-Fair-Value Investigations</u>, 81 Fed. Reg.

7,073 (Dep't Commerce), P.R. 54.[4]  ATC, a producer of pneumatic off-the-road tires in India, was

selected as a mandatory respondent.[5]  Final Determination; IDM.  Commerce issued a

questionnaire to the Government of India, which was then forwarded to ATC.  Letter from Dep't

of Commerce to Embassy of India Pertaining to Gov't of India, Respondent Questionnaire (March

2, 2016), P.R. 87.  In response, ATC indicated that one of its plants is located in an SEZ governed

by the SEZ Act of 2005 and another plant has EOU status.  ATC Initial QR at 15–16, 23, Ex. 19.

Both plants are exempted from customs duties and various taxes.  Id.; Gov't of India Resp. to Part

II of the Department's Countervailing Duty Questionnaire at 77–78 (Apr. 28, 2016) ("Gov't of

India QR"), P.R. 194, C.R. 347.  ATC also stated that, under Indian law, the plants are located

outside the customs area territory of India.  ATC Initial QR at 16–20, 23.  ATC explained that

---

[4] The investigation was initiated in response to a petition filed on behalf of Titan Tire Corporation and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC.

[5] In countervailable subsidy investigations or administrative reviews, Commerce may select mandatory respondents pursuant to 19 U.S.C. § 1677f-1(e)(2), which provides:

> If the administering authority determines that it is not practicable to determine individual countervailable subsidy rates [in investigations or administrative reviews] because of the large number of exporters or producers involved in the investigation or review, the administering authority may—
>
> > (A) determine individual countervailable subsidy rates for a reasonable number of exporters or producers by limiting its examination to—
> >
> > > (i) a sample of exporters or producers that the administering authority determines is statistically valid based on the information available to the administering authority at the time of selection, or
> > >
> > > (ii) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that the administering authority determines can be reasonably examined; or
> >
> > (B) determine a single country-wide subsidy rate to be applied to all exporters and producers.

companies operating in an SEZ or EOU must meet a certain NFE requirement or be subject to a penalty, and detailed the controls the Government of India imposes on the shipment of merchandise from SEZs to India's domestic tariff area.  Id. at 17, 19.

Commerce issued its preliminary determination on June 20, 2016.  Certain New Pneumatic Off-the-Road Tires from India, 81 Fed. Reg. 39,903 (Dep't Commerce), P.R. 464, and accompanying Issues and Decision Memorandum ("PDM"), P.R. 455.  Commerce preliminarily determined that the SEZ and EOU facilities are within the customs territory of India and these programs are countervailable because: (1) program eligibility is contingent upon export performance; (2) the Government of India had not provided evidence that its record-keeping measures for the program are sufficiently stringent; and (3) the same programs had been found countervailable in previous determinations.  PDM at 18–23.  Commerce consequently considered unpaid duty exemptions on capital goods and raw materials imported under the programs to be interest-free loans -- and thus countervailable benefits -- made to ATC at the time of importation.  Id. at 23.

At verification, the Government of India explained that the SEZ and EOU facilities are "considered to be bonded zones that are outside the domestic tariff area of India (DTA), and that they are both monitored in essentially the same manner."  Verification of the Questionnaire Resps. Submitted by the Gov't of India (Oct. 5, 2017) at 2, P.R. 512, C.R. 707.  The Government of India described its program monitoring methods as follows.  Companies "execute a security bond that allows these companies to import goods without the payment of duties at the time of import" and Indian customs officials monitor imports through a "closed system" initiated by a company notifying "[Indian] Customs of its intent to import capital goods or raw materials."  Id.  "The actual physical goods" are "monitored based on the declaration forms regarding the goods" but "physical

inspections [are] not normal." Id.  The Government of India explained that they did not consider waste and consumption factors or provide for the monitoring of waste and scrap. Id. at 3.  Customs officials had not audited ATC's manufacturing processes at ATC's SEZ location. Id.  Exports from SEZs and EOUs are monitored in a similar fashion, and physical inspections are likewise atypical for EOU manufacturing. Id.  ATC's explanation of the monitoring process was largely the same as the Government of India's description.  Verification of the Questionnaire Resps. Submitted by ATC Tires Private Limited (Oct. 6, 2016) at 5 ("ATC Verification Resp."), P.R. 513, C.R. 708.

ATC submitted a case brief on October 17, 2016, arguing that record evidence demonstrated that the SEZ and EOU facilities were located outside the customs territory of India and, therefore, any duties and taxes not paid to the Government of India could not be considered a countervailable benefit provided by the Government of India.  ATC Tires Private Limited's Case Brief at 19–28, P.R. 521–22, C.R. 711.  The Government of India also argued that Indian law entitles companies not to pay certain customs duties and taxes related to their SEZ and EOU activities.  Gov't of India's Case Br. (Oct. 13, 2016), P.R. 517.

In its Final Determination and accompanying IDM, Commerce continued to find that the SEZ and EOUs were within the customs territory of India and that these programs constituted countervailable subsidies under § 705 of the Tariff Act of 1930 and 19 CFR 351.519(a)(4).  IDM at 21–25.  Specifically, Commerce found that: (1) the NFE requirement and penalty for failing to meet it meant that companies were contingently liable for duties and taxes until the benchmark was met; (2) the Government of India lacked sufficient mechanisms to confirm the use of inputs in exported products, making normal allowance for waste, and that there were "systemic record keeping problems"; and (3) this determination was consistent with prior Commerce rulings.

ATC instigated this action challenging Commerce's determination on April 5, 2017.
Summ., ECF No. 1. ATC filed its Motion for Judgment on the Agency Record on September 29,
2017, the United States filed its response on December 21, 2017, and ATC filed its reply on
January 26, 2018. Pl.'s Br., ECF Nos. 35–36; Def.'s Br., ECF No. 39; Pl.'s Reply, ECF No. 40.
This court heard oral argument on June 5, 2018.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C.
§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(ii). The standard of review in this action is set forth in 19
U.S.C. § 1516a(b)(l)(B)(i): "[t]he court shall hold unlawful any determination, finding or
conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in
accordance with law."

## DISCUSSION

Of relevance to the instant case, Commerce determined that the SEZ and EOU units are
countervailable because there was a financial contribution and a benefit was conferred.[6] See 19
U.S.C. §1677(5)(B), (D)(i)–(ii) (discussed at supra, p. 2). Alliance contends that Commerce's
determination that ATC received a benefit was not supported by substantial evidence or in
accordance with law because it applied the wrong standard in determining whether ATC's facilities
operate outside India's customs territory. Alliance argues that, because ATC's facilities operated
in SEZ/EOU locations outside of the customs territory of India and were exempt from duties and

---

[6] Commerce also determined that the special economic zones are specific: "because eligibility for
all [SEZ] benefits is contingent upon export performance, we find that the assistance provided
under the program is specific with the meaning of sections [1677(5A)(A) and (B)]". See PDM at
23; IDM at 23. Alliance does not dispute that determination in its briefing to this court and this
issue of specificity is thus not before the court. See Novosteel SA v. United States, 284 F.3d 1261,
1274 (Fed. Cir. 2002).

taxes under Indian law, no revenue was foregone by the Government of India as a result of these exemptions and thus no countervailable subsidies were provided. Further, Alliance argues that the Government of India has sufficient monitoring mechanisms in place at SEZ and EOU facilities to ensure that these facilities operate outside the customs territory of India, and that Commerce should not have relied on 19 C.F.R. § 351.519(a)(4) to determine the adequacy of the Government of India's monitoring system. These arguments are not persuasive.

Commerce's determination that revenue was foregone, and a countervailable benefit thus conferred, is supported by substantial evidence. Substantial evidence is "more than a mere scintilla" and amounts to what a "reasonable mind might accept as adequate to support a conclusion." Downhole Pipe & Equip., L.P. v. United States, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). Here, SEZ and EOU activities were exempt from duties and taxes as long as they met the NFE requirement. If the NFE requirement was not met, companies had to pay a penalty to the Government of India. On this basis, Commerce reasonably determined that taxes and duties were applied to goods entering the SEZ and EOUs and that Companies were contingently liable for taxes and duties until the NFE requirement was met. Therefore, when the Government of India did not require companies to pay these taxes and duties which were otherwise owed after meeting the NFE requirement, a benefit was conferred in the form of tax and duty revenue foregone consistent with 19 U.S.C. § 1677(5). IDM at 22; see 19 U.S.C. § 1677(5)(B), (D)(i)–(ii). DM at 22.

Alliance argues that, because the penalty is not explicitly tied to the amount of taxes or duties owed, and is instead potentially tied to the amount a company falls below its NFE requirement, Commerce's determination that revenue is foregone is not supported by substantial evidence. Pl.'s Br. at 22–23. However, Alliance provides no authority for why this distinction

matters, let alone why it renders Commerce's conclusion unsupported by substantial evidence.

Citing other matters, Alliance also contends that Commerce's determination here is inconsistent

with findings that other countries' duty free zones are not countervailable, and is thus arbitrary and

capricious.[7]   To the contrary, the court concludes that this determination is consistent with

Commerce's previous treatment of India's SEZ and EOU programs.  See Indian PET PDM 2015

at 13; Polyethylene Terephthalate Firm, Sheet, and Strip from India: Final Results of

Countervailing New Shipper Review, 76 FR 30,910 (Dep't Commerce May 27, 2011) ("Indian

PET Film NSR"), and accompanying Issues and Decision Memorandum at 15.  Furthermore, the

duty free programs in the determinations cited by Alliance involved no contingent liability or other

evidence of foregone revenue, and are thus distinguishable from the SEZ and EOU programs at

issue here.  As noted in Circular Welded Carbon-Quality Steel Pipe from Vietnam:

> There is no indication that the SEZs we analyzed there were outside the customs
> territory of India.  Rather, we observed in that case that "until an SEZ demonstrates
> that it has fully met its export requirement, the company remains contingently liable
> for the import duties," which implies that a duty obligation is incurred when goods
> enter the SEZ.  This is not the situation present in the investigated program in
> Vietnam.

Circular Welded Carbon-Quality Steel Pipe from Vietnam: Final Negative Countervailing Duty

Determination, 77 FR 64,471, and accompanying Issues and Decision Memorandum (Dep't

---

[7]  See, e.g., Circular Welded Carbon-Quality Steel Pipe from Vietnam: Final Negative
Countervailing Duty Determination, 77 FR 64,471, and accompanying Issues and Decision
Memorandum (Dep't of Commerce Oct. 22, 2012) at 14; Final Results of Countervailing Duty
(CVD) Administrative Review: Circular Welded Carbon Steel Pipes and Tubes from Turkey, 78
FR 64,916, and accompanying Issues and Decision Memorandum (Dep't of Commerce Oct. 30,
2013) at 21;   Certain Polyethylene Terephthalate Resin from the Sultanate of Oman: Final
Negative Countervailing Duty Determination, 81 FR 13,321, and accompanying Issues and
Decision Memorandum (Dep't of Commerce March 4, 2016) at 9–10; Certain Uncoated Paper
From Indonesia: Final Affirmative Countervailing Duty Determination, 81 FR 3,104, and
accompanying Issues and Decision Memorandum (Dep't of Commerce Jan. 7, 2016) at 20–21.

Commerce Oct. 22, 2012) ("Vietnam IDM") at 14 (quoting PET Film from India NSR and accompanying IDM at 15).

Commerce's determination that the Government of India lacked sufficient monitoring systems to ensure that the SEZs and EOUs operated outside its customs territory is also supported by substantial evidence and in accordance with law.   When import charges are exempted upon export, "a benefit exists to the extent that the exemption extends to inputs that are not consumed in the production of the exported product, making normal allowances for waste, or if the exemption covers charges other than import charges that are imposed on the input."  19 CFR § 351.519(a)(1)(ii).  Furthermore,

> [T]he Secretary [of Commerce] will consider the entire amount of an exemption, deferral, remission or drawback to confer a benefit, unless the Secretary determines that:
>
> (i) The government in question has in place and applies a system or procedure to confirm which inputs are consumed in the production of the exported products and in what amounts, and the system or procedure is reasonable, effective for the purposes intended, and is based on generally accepted commercial practices in the country of export; or
>
> (ii) If the government in question does not have a system or procedure in place, if the system or procedure is not reasonable, or if the system or procedure is instituted and considered reasonable, but is found not to be applied or not to be applied effectively, the government in question has carried out an examination of actual inputs involved to confirm which inputs are consumed in the production of the exported product, and in what amounts.

19 CFR § 351.519(a)(4).

Here, substantial record evidence supports Commerce's determination that the Government of India lacks an adequate system in place to confirm which inputs, and in what amounts, are consumed in the production of exported products, making normal allowance for waste.  IDM at 23; Gov't of India Verification Report at 3.  In its questionnaire responses, the Government of India stated that its monitoring system for the SEZ and EOU programs does not

consider waste and consumption production factors or monitor waste and scrap and physical inspections are atypical.  Verification Report at 3.  This determination is also consistent with Commerce's prior findings that the Government of India's monitoring system has systemic record-keeping problems.  See Indian PET Film NSR IDM at 14–15; Indian PET Film PDM 2015 at 13–18.

Alliance does not dispute that the Government of India's monitoring system does not account for production inputs, nor that 19 CFR § 351.519(a)(4) applies to situations where duties exemption programs are conducted within a country's customs territory.  Pl.'s Reply at 7–8. Rather, Alliance contends Commerce applied the wrong standard and that its decision is therefore not in accordance with law.  According to Alliance, 19 CFR § 351.519(a)(4) does not apply to duty free zones and Commerce should instead consider whether there are "enforcement measures that ensure goods entering the free trade area are accounted for through exportation or entry into the country's customs territory and, in the latter case, appropriate duties are collected."  Pl.'s Br. at 12 (quoting Certain Uncoated Paper From Indonesia: Final Affirmative Countervailing Duty Determination, 81 FR 3,104, and accompanying Issues and Decision Memorandum (Dep't Commerce Jan. 7, 2016) ("Indonesia IDM") at 22).

This argument is not persuasive.  As previously discussed, the Indian SEZ and EOU programs impose contingent duty liability on companies, while the programs in the determinations Alliance cites do not impose such duties.  See, e.g., Vietnam IDM at 13–14 (distinguishing the Indian SEZ program from Vietnam's on the basis of contingent duty liability).  As such, the SEZ and EOU programs are within the Indian customs territory, and 19 CFR § 351.519(a)(4) applies. See id. at 13 ("19 CFR 351.519 addresses situations where duties are otherwise due, i.e., situations in which goods enter the country's customs territory.").  Further, Commerce has applied this same

standard to evaluating the Indian SEZ and EOU programs before, so it is hardly inconsistent with precedent to do so again.

Moreover, the monitoring methods found sufficient in determinations applying Alliance's proposed standard were more extensive than those employed by the Government of India here. See, e.g., Vietnam IDM at 14–15 (detailing a rigorous monitoring process that involves physical inspections, evaluation of scrap use, and fraud detection software); Final Results of Countervailing Duty (CVD) Administrative Review: Circular Welded Carbon Steel Pipes and Tubes from Turkey, 78 FR 64,916, and accompanying Issues and Decision Memorandum (Dep't Commerce Oct. 30, 2013) at 21 ("[W]e note that the Department has previously examined Turkey's duty drawback system and determined that the [Government of Turkey] has in place and applies a drawback system that ensures that duty exemptions are provided only to products that are consumed in the production of the exported product."); Indonesia IDM at 22–23 (describing a rigorous monitoring process that involved routine record keeping, physical inspections, and periodic audits); Certain Polyethylene Terephthalate Resin from the Sultanate of Oman: Final Negative Countervailing Duty Determination, 81 FR 13,321, and accompanying Issues and Decision Memorandum (Dep't Commerce Mar. 4, 2016) at 12 (noting that goods "entering and leaving the zone must be administered by Oman customs in the same manner as merchandise entering and leaving the Port of Salalah itself, as such merchandise is imported into or exported from Oman").

## CONCLUSION

For the reasons stated above, Commerce's determination is supported by substantial evidence and in accordance with law.  The court thus denies Alliance's motion and sustains Commerce's <u>Final Determination</u>.

**SO ORDERED**.

*/s/   Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated:  June 25, 2018
       New York, New York